**Kevin Winston OSBORN, Petitioner,**

v.

**Duane SCHILLINGER, Warden of the Wyoming State Penitentiary, and A.G. McClintock, the Attorney General of the State of Wyoming, Respondents.**

No. C85–0410–B.

United States District Court,
D. Wyoming.

July 7, 1986.

Craig L. Truman, Karen A. Chaney, Denver, Colo., Ronald Rogers, Cheyenne, Wyo., for petitioner.

John W. Renneisen, Sr. Asst. Atty. Gen., Thomas A. Maurer, Asst. Atty. Gen., State of Wyo., Cheyenne, Wyo., for respondents.

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

BRIMMER, Chief Judge.

This matter came before the Court pursuant to a petition for writ of habeas corpus filed by Kevin Osborn. The Court, having heard the arguments of counsel, reviewed the briefs and the transcript of the hearings conducted in this matter and being fully advised in the premises, FINDS and ORDERS as follows:

Kevin Osborn, Willard Teel, Terry Green and Ellen Hopkins were charged with a series of crimes which occurred in Sweetwater and Uinta Counties in western Wyoming on May 14 and 15, 1982. Almost from the start of their custody, a race to the courthouse occurred, but counsel for the petitioner did not participate in it. Counsel for Willard Teel arranged a plea bargain but co-defendant Teel was strangled by co-defendant Terry Green in their jail cell before Teel could enter his pleas. Ellen Hopkins plead guilty to aiding and abetting the aggravated robbery of Dale Moore in Sweetwater County and conspiracy to commit aggravated robbery and aggravated robbery of Jimmy Ray O'Briant in Uinta County. (Exhibit LL) She received a sentence of four to ten years and five to ten years with one year suspended, to be served concurrently. (Exhibit LL) Co-defendant Green plead guilty to the Sweetwater County charges of first degree murder of Audrey Ditmars by strangulation, attempted first degree murder of Dale Moore by stabbing, first degree murder of co-defendant Willard Teel by strangulation, aggravated robbery of Dale Moore, first degree sexual assault of Audrey Ditmars, and attempted second degree murder of Jimmy Ray O'Briant, a Uinta County charge. (Exhibit LL) Mr. Green received four consecutive life sentences for the two murders and two attempted murders and two consecutive sentences of 45 to 50 years

for the aggravated robbery and rape charges. (Exhibit LL)

After co-defendants Green and Hopkins were sentenced, Jimmy Ray O'Briant, the victim in Uinta County, died. On August 23, 1982, Kevin Osborn was charged in Sweetwater County with aiding and abetting the first degree murder of Audrey Ditmars and the attempted first degree murder and aggravated robbery of Dale Moore. (Exhibit MM–2) Uinta County charged petitioner with conspiracy to commit aggravated robbery, aggravated robbery and the felony murder of Jimmy Ray O'Briant. (Exhibit MM–2) Petitioner waived his rights to preliminary hearings in both counties, and waived his right to venue in Uinta County on the Uinta County charges. (Exhibit MM–2).

At the arraignment held on August 23, 1982, Mr. Osborn plead guilty to all of the charges against him and requested the death penalty. On September 20, 1982, petitioner's counsel, Leonard Munker, filed a motion to rescind the death penalty request. Counsel did not file a motion to withdraw the guilty pleas, but the trial court apparently treated a letter from Mr. Osborn as a motion to withdraw the pleas and denied it on October 12, 1982. A two-day sentencing hearing took place on October 12 and 13, 1982, after which the trial court sentenced petitioner to death on the charge of first degree felony murder for the death of Jimmy Ray O'Briant. (Exhibit MM–2).

## EXHAUSTION OF REMEDIES

■ Petitioner must exhaust his remedies in the state courts before this Court can grant his application for a writ of habeas corpus. 28 U.S.C. § 2254(b). The exhaustion of state remedies rule gives the state an initial opportunity to review and correct alleged constitutional violations. *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963).

■ Petitioner has exhausted his remedies in the Wyoming courts. On direct appeal from his conviction, argued by Leonard Munker, the Wyoming Supreme Court affirmed Osborn's judgment and sentences. *Osborn v. State*, 672 P.2d 777 (Wyo.1983), *cert. denied*, 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984). Martin McClain then filed a Rule 36 Motion for sentence reduction in the Third Judicial District Court, Sweetwater County, which was denied. A Consolidated Petition for Post-Conviction Relief and Writ of Habeas Corpus was filed by Martin McClain in the trial court. (Exhibit HH–2) Osborn requested that Martin McClain be removed as counsel and, two months later, John Ackerman entered his appearance on Osborn's behalf. (Exhibit HH–2) Ackerman filed a First Amended Consolidated Petition for Post-Conviction Relief and Writ of Habeas Corpus in December, 1984. (Exhibit HH–2) In February, 1985, Craig Truman entered his appearance on behalf of Osborn and filed a response to the State's motion to dismiss. (Exhibit HH–2) Ruling without a hearing, the trial court denied the First Amended Consolidated Petition. On September 18, 1985, Osborn filed a motion to stay execution and a motion to reconsider with the trial court. (Exhibit HH–2) The Court denied the motion for stay on September 18, 1985. (Exhibit HH–2) Petitioner filed a Notice of Appeal and Motion to Stay Execution in the Wyoming Supreme Court on September 23, 1985. (Exhibit HH–2) The Supreme Court denied the motion to stay execution, which was scheduled to occur four days later. (Exhibit HH–1)

The State argues that petitioner deliberately bypassed available state remedies. The Court finds this contention is not supported by the record. Petitioner filed a Rule 36 motion to reduce his sentence. The trial court denied the motion. District courts do not have jurisdiction to reduce a death sentence on a Rule 36 motion. *Hopkinson v. State*, 704 P.2d 1323 (Wyo.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 187, 88 L.Ed.2d 155 (1985).

Petitioner filed a motion for habeas corpus in the state district court, which was denied. There is no appeal from denial of a writ of habeas corpus by a district court. *State ex rel. Hopkinson v. District Court*, 696 P.2d 54 (Wyo.1985), *cert. denied*, ——

U.S. ——, 106 S.Ct. 187, 88 L.Ed.2d 155 (1985).

The trial court denied the petitioner's motion for post-conviction relief. If an error could or should have been raised on appeal, a petition for post-conviction relief will not lie. *Id.* at 64. The alleged errors which were the basis of the petition for post-conviction relief are errors which were appropriate subjects of appeal. In fact, many of these issues were raised on appeal. See *Osborn v. State*, 672 P.2d 777 (Wyo.1983), *cert. denied*, 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984).

The State contends that petitioner should have filed an original petition for habeas corpus with the Wyoming Supreme Court. In the direct appeal of petitioner's conviction, the Wyoming Supreme Court had an opportunity to review most of the issues raised in the federal petition and rejected petitioner's arguments. *Id.* Petitioners are not required to file repetitious applications in the state courts to satisfy the exhaustion of state remedies requirement. *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), quoting *Brown v. Allen*, 344 U.S. 443, 449 n. 3, 73 S.Ct. 397, 403 n. 3, 97 L.Ed. 469 (1953). The exhaustion rule does not require Mr. Osborn to resubmit his arguments made on appeal under the guise of an original petition for habeas corpus. The purpose of the exhaustion requirement has been satisfied because the Wyoming Supreme Court has had an opportunity to review the issues now presented in federal court.

■ The State argues that relief in the state courts was denied on procedural grounds, and that the procedural default bars federal review. In its opinion letter dated March 25, 1985, the trial court held that petitioner had not made a sufficient showing to merit a hearing, citing *State ex rel. Hopkinson v. District Court*, 696 P.2d 54 (Wyo.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 187, 88 L.Ed.2d 155 (1985) and *Bibbins v. State*, 696 P.2d 1300 (Wyo.1985). The trial court's decision to deny petitioner's request for a hearing was based on procedural grounds. The trial court went

on to deny the First Amended Consolidated Petition on the merits. The court stated that it had reviewed the entire file and the petition. It cited the portion of *State ex rel. Hopkinson v. District Court, supra* at 64, which held that post-conviction relief will not lie where errors could or should have been raised on appeal. Where the trial court denied the First Amended Consolidated Petition on substantive grounds, review in the federal courts is proper. *Brinlee v. Crisp*, 608 F.2d 839, 857 n. 13 (1979) *cert. denied*, 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980).

Petitioner presented many arguments for the consideration of this Court. Because several issues raised by petitioner require that he receive an opportunity to withdraw his plea and receive a new sentencing hearing, the Court will only address petitioner's remaining arguments briefly.

In passing, this Court recognizes that Wyoming Supreme Court never has had before it a full record. It essentially dealt with a procedural situation, without a factual foundation such as developed by this Court in its six (6) day hearing, which was really the only full hearing Osborn has ever had. Because of the lack of an extensive evidentiary proceeding, the facts herein found were for the most part not known to either the state trial court or supreme court.

## INVOLUNTARY PLEA

Petitioner argues that the pleas he entered were not knowing and voluntary. Petitioner plead guilty to all the charges against him and requested the death penalty. A plea must be knowing and voluntary to satisfy the requirements of due process. *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). A plea induced by a misrepresentation is not voluntary. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

■ Petitioner's counsel told him that he would be able to withdraw his plea if he withdrew his request for the death penalty. (Transcript Vol. IV, p. 120; Vol. VII, p. 25;

Vol. III, p. 200). This was not in fact the case. Petitioner wanted different counsel, and thought he could attain that end by holding a press conference in which he planned to criticize his public defender; he hoped that the ACLU would hear of his case and provide him with new counsel. (Transcript Vol. III, p. 194). In the trial court, a psychologist testified that petitioner suffered from depression and had delusions about the importance of his case. (Transcript Vol. V, p. 66). Mr. Munker told petitioner he could have a press conference only after he entered his pleas. (Exhibit MM–2, p. 34). This promise by counsel was not placed on the record as required by Rule 11 of the Wyoming Rules of Criminal Procedure and Rule 11 of the Federal Rules of Criminal Procedure until after the trial court had accepted Mr. Osborn's guilty pleas. *See Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

The Court finds that petitioner entered his pleas without an understanding of their finality, in reliance on an undisclosed promise. The pleas were not knowing and voluntary, and were, therefore, obtained in violation of due process. Such involuntary pleas are void. *McCarthy v. United States, supra* at 466, 89 S.Ct. at 1170.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ Petitioner argues that he did not receive effective assistance of counsel, guaranteed him by the Sixth Amendment, at several stages of the proceedings. Petitioner must satisfy a two-part test to establish a violation of his Sixth Amendment right to counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Mosier v. Murphy,* 790 F.2d 62 (10th Cir.1986). First, he must show that his attorney did not provide reasonably effective assistance. *Strickland, supra* 466 U.S. at 687–88, 104 S.Ct. at 2055, 80 L.Ed.2d at 693. In addition, petitioner must show prejudice. He must show that but for the errors of counsel, the result of the proceedings would have been different. *Id.* 466 U.S. at 694–95, 104 S.Ct. at 2068, 80

L.Ed.2d at 698. Both parts of this test are mixed questions of law and fact. Therefore, the state courts' findings on these questions are not binding on this Court. *Id.* 466 U.S. at 697–99, 104 S.Ct. at 2069–70, 80 L.Ed.2d at 700.

The State contends that petitioner was uncooperative and unreasonable, and that, therefore, any ineffectiveness of counsel does not amount to a constitutional deprivation. Behavior of the client is a factor that must be considered in judging the reasonableness of counsel's actions. *Id.* 466 U.S. at 690–91, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Difficult defendants, however, surely enjoy the same constitutional guarantees as cooperative ones.

■ Petitioner has met his burden to show, under the first part of the *Strickland* test, that his counsel's performance fell below a standard of reasonably effective assistance. His attorney frustrated petitioner's efforts to withdraw his plea. There is conflicting testimony regarding exactly when Mr. Munker learned that Mr. Osborn wanted to withdraw his guilty pleas and death penalty request. On September 16, 1982 at the latest, one month before sentencing, counsel learned that his client had had a change of heart regarding the guilty pleas. Counsel never filed a motion to withdraw the pleas. The trial court, at the sentencing hearing, apparently treated a letter from Mr. Osborn as a motion to withdraw his pleas. Counsel then made statements to the press to the effect that his client was "playing his game and he has a First Amendment right to do whatever he wants to do," and "I frankly don't think the chances of them accepting a change of plea are too great. At this point, I can't say that I've heard or know of a basis for the change ..." The article went on to state that there is "not one shred of evidence that he was under the influence of drugs," and that "Munker said Osborn is only trying to attract attention." (Petitioner's Exhibit No. 1).

Counsel violated his duty of loyalty by telling the press his opinion about the merits of Mr. Osborn's case. Model Code of

Professional Responsibility DR 7–107(B)(6). Counsel's statements that his client was playing games and that his request to withdraw his pleas was groundless foreclosed the possibility that the trial court would seriously consider Osborn's request to withdraw his pleas. *See Douglas v. Wainwright*, 714 F.2d 1532 (11th Cir.1983), *cert. denied*, 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985). Such statements could easily have come from the prosecutor, rather than defendant's counsel.

■ Petitioner has satisfied the prejudice requirement under *Strickland, supra*, as well. But for counsel's failure to file a motion to withdraw the pleas and his public statements denigrating his client's request, there is a reasonable probability that the trial court, or the Wyoming Supreme Court on appeal, may have exercised discretion to permit Mr. Osborn to withdraw his pleas and take advantage of his constitutional right to a jury trial.

■ Nor did petitioner receive effective assistance of counsel at his sentencing proceeding. The Strickland test arose in a situation involving capital sentencing. *Strickland v. Washington, supra*. Severity of the charge is a factor to consider in evaluating an ineffective assistance claim. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir.1983), *cert. denied*, 467 U.S. 1220, 104 S.Ct. 2669, 81 L.Ed.2d 374 (1985). That petitioner received the death penalty is relevant to his claim of ineffective assistance. Counsel's performance at sentencing fell short of reasonable assistance in several ways. He was not adequately prepared to present any mitigating evidence. In fact, he was completely unprepared for such a hearing, and had counted on talking the prosecutor into a plea bargain of a life sentence, but had no luck with an adamant young deputy prosecutor from another county. He went into the hearing with no family background witnesses, medical history, and little other evidence of mitigation. His closing argument at sentencing brought attention to the difficulties he had with his client and the vicious nature of the crimes with which Osborn was charged.

Counsel did not object to prejudicial *ex parte* information provided to the trial court before sentencing.

The Wyoming capital punishment statute lists seven possible mitigating factors to be considered in evaluating the possibility of imposing the death penalty. Wyo.Stat. § 6–2–102(j) (Supp.1983). Capital defendants may also present evidence of non-statutory mitigating factors, such as family history and medical history. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). A tactical decision on which mitigating evidence to present must be based on a complete investigation. *See Pickens v. Lockhart*, 714 F.2d 1455 (8th Cir.1983). No such investigation was ever made.

Counsel believed he could persuade the Uinta County prosecutor to change his mind about seeking the death penalty. (Transcript Vol. III, p. 16). The Uinta County prosecutor, Scott Smith, had been practicing law for barely a year at the time he handled the Osborn case. The Sweetwater County prosecutor, Robert Reese, who had substantially more experience, was opposed to the death penalty, and did not seek it for the Sweetwater County deaths, particularly for Mr. Green, who will be remembered in this Court as the most vicious criminal, bar none, including petitioner, who ever appeared before this Court, and who nonetheless received life sentences for his heinous crimes. (Partial Transcript, pp. 11, 32). Mr. Reese had persuaded Mr. Smith to go along with the plea bargain for co-defendant Teel. (Partial Transcript, pp. 11, 12). Mr. Reese testified that Mr. Smith initially considered seeking the death penalty for all three male co-defendants. (Partial Transcript, p. 12). Mr. Reese persuaded Smith to forego the death penalty for co-defendant Green, even after Green had strangled Teel in their jail cell. (Partial Transcript, pp. 13, 14).

Because Mr. Munker believed up until and during the sentencing hearing that he could persuade Smith to forego the death penalty, he was not adequately prepared for the sentencing hearing. Mr. Munker

testified before this Court that he did not discuss the potential mitigating factors, such as petitioner's history of child abuse, head injuries, hospitalization in an Alabama mental hospital, and drug and alcohol abuse with the Osborn family. (Transcript, Vol. I, pp. 207–212). Counsel did not obtain Osborn's medical records from Alabama or court records from Marshall County Circuit Court in Alabama indicating that Osborn has been found insane in Alabama. (Transcript, Vol. V, p. 63). This information was relevant to a statutory mitigating circumstance, whether the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance, and also to nonstatutory mitigating circumstances. Wyo.Stat. § 6–2–102(j)(ii). Professor Strait from the University of Puget Sound School of Law testified that testimony from family and friends is important to show that the defendant is not different from other defendants who have received life sentences and to rebut allegations that defendant is a crazy, isolated loner. (Transcript, Vol. IV, pp. 208–209).

In his closing argument, at the sentencing hearing, petitioner's counsel referred to *ex parte* information provided in chambers to the sentencing judge. Counsel did not object to it or effectively counteract its effect. (Exhibit X–2, p. 233). *See Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). Mr. Munker's strategy in mitigation was to point out that Green was at least as dangerous as Osborn. Counsel was not adequately prepared to present this theory of mitigation. He did not attempt to determine what information the Judge had received, and therefore did not find out that it was extremely damaging to his client because it labeled Osborn as the ringleader, contradicting counsel's theory of mitigation. Counsel did not attend or obtain transcripts of the arraignment and sentencing hearing of co-defendants Green and Hopkins, and was therefore unable to effectively impeach Ms. Hopkins, who cast Osborn as the ringleader. Ms. Hopkins was not a credible witness when she testified before this Court. This Court finds that she was unre-

liable and untruthful, and that she was just as guilty as the rest of them, but got only a 4 to 10 year sentence. Counsel did not contact Teel's attorney, Wyatt Skaggs, after Teel was strangled by Green, to find out who Teel considered the ringleader. Skaggs testified in the hearing held before this Court that he thought Mr. Green was the ringleader, and that Teel had told him that it was Green's idea to kill Mrs. Dit-mars. (Transcript Vol. II, pp. 25, 30). Dr. Miracle, a psychologist who had examined both Osborn and Green, testified before this Court that Green was very impulsive, had little, if any, conscience, and that Green was a much more violent, aggressive person than Osborn. (Transcript Vol. V, pp. 80, 82). All of this information, available to counsel had he done a thorough investigation, would surely have influenced the trial court's decision to impose the death penalty.

Counsel's arguments at the sentencing hearing stressed the brutality of the crimes and the difficulty his client had presented to him. At the beginning of the hearing, counsel referred to the difficulty of presenting mitigating circumstances when evidence against a client is overwhelming. In closing, counsel referred to the problems Osborn's behavior had created for counsel throughout the representation. Counsel described the crimes as horrendous. He analogized his client and the co-defendants to "sharks feeding in the ocean in a frenzy; something that's just animal in all aspects." (Exhibit X–2, pp. 326, 329, 334). Counsel's statements had the effect of dehumanizing Mr. Osborn and accentuated the negative aspects of his client. Separating himself from Mr. Osborn in this manner was a breach of counsel's duty of loyalty. *See King v. Strickland*, 714 F.2d 1481 (11th Cir.1983), *vac'd* 467 U.S. 1211, 104 S.Ct. 2651, 81 L.Ed.2d 358 *on reconsideration*, 748 F.2d 1462 (11th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 2020, 85 L.Ed.2d 301 (1985).

Counsel's inadequate preparation for sentencing, failure to investigate or to object to *ex parte* information which was

618

extremely damaging to his theory of the case, and his closing argument, taken together, as a whole, do not meet a standard of reasonably effective assistance. The mitigating evidence which counsel failed to present would have produced a different result at sentencing. Petitioner has satisfied both prongs of the test established by the United States Supreme Court in *Strickland*.

## EX PARTE INFORMATION

■ Petitioner argues that his constitutional right to due process has been denied because the death penalty was imposed, in part, on *ex parte* information provided to the court, which petitioner had no opportunity to deny or explain. *See Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). Petitioner did not waive his objection to the consideration of *ex parte* information in sentencing by failing to raise the issue at an earlier hearing. *Id.* at 361, 97 S.Ct. at 1206.

■ Robert Reese, the Sweetwater County prosecutor, testified before this Court that Judge Hamm, who had presided over the cases against co-defendants Green and Hopkins, asked Reese why the prosecution "had not sought the death penalty as to Terry Green." (Partial Transcript, pp. 6, 7). Reese told Judge Hamm that he had not pursued the death penalty for Mr. Green because Green had an extensive history of psychiatric problems and because "Green did whatever he was told to do ... Goody told him to plead guilty and he pled guilty; Teel told him to kill him and he killed him; and he was told to kill Mrs. Ditmars and he killed Mrs. Ditmars." (Partial Transcript, p. 7). At Petitioner's sentencing hearing, Judge Hamm stated "... in every case but one, the evidence indicates Green was doing what he was told to do by Osborn. He was but an extension of Osborn's arm; a tool to be used." (Exhibit X-2, p. 32). The language used by the sentencing judge is strikingly similar to the language of Mr. Reese in the *ex parte* conversation with Judge Hamm. The trial court's inquiry into the government's treatment of co-defendant Green shows that the trial court was concerned with the identity of the ringleader.

In *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), the United States Supreme Court held that a capital defendant's due process rights were violated when his death sentence was imposed, at least in part, on information contained in a presentence report, portions of which were not revealed to the defendant or defense counsel. *Id.* at 362, 97 S.Ct. at 1206. The State contends that Judge Hamm did not rely on *ex parte* information he sought from the prosecutor. The trial judge in the *Gardner* case did not state that he had relied on the confidential portion of the presentence report, and the United States Supreme Court did not have a copy of the report in the trial record and therefore could not know what it contained. The constitutional violation arose from the risk that the undisclosed information could be misinterpreted by the judge. *Id.* at 359, 97 S.Ct. at 1205. The Court rejected Florida's argument that trial judges should be trusted to exercise discretion responsibly despite exposure to secret information and recognized "the importance of giving counsel an opportunity to comment on facts which may influence the sentencing decision in capital cases." *Id.* at 360, 97 S.Ct. at 1206.

A further problem exists because the occurrence of the *ex parte* conversation was not part of the record reviewed by the Wyoming Supreme Court in the automatic review it conducted as required under the Wyoming death penalty statute. Wyo.Stat. § 6-2-103 (1988). *See Gardner v. Florida, supra* at 361, 97 S.Ct. at 1206. Full disclosure of the basis of the sentence to the reviewing court is necessary to satisfy the requirements of *Furman v. Georgia. Id.* at 361, 97 S.Ct. at 1206.

The ineffective assistance petitioner received at sentencing and the *ex parte* information provided to the trial court resulted in a deprivation of petitioner's constitutional rights at the sentencing phase of his case.

## CONFLICT OF INTEREST

Petitioner contends that he received ineffective assistance of counsel as a result of joint representation of all the co-defendants by the Wyoming Public Defender's office. Petitioner must show that an actual conflict of interest adversely affected his counsel's performance to make out a constitutional violation. *Cuyler v. Sullivan,* 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980). Three public defenders worked on petitioner's case at various times. Nothing in the record suggests that their employment in the public defender's office, during the same period that other attorneys employed by the same defender system represented co-defendants in the case, prevented any of petitioner's attorneys from presenting arguments or evidence on behalf of Mr. Osborn. *Compare, Baty v. Balkcom,* 661 F.2d 391 (5th Cir.1981), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982).

## INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL

Petitioner contends he was denied effective assistance of counsel in his first appeal due to his attorney's conflict of interest. Petitioner argues that Mr. Munker raised his own ineffectiveness before the Wyoming Supreme Court, but failed to request a hearing on the ineffectiveness claim and could not argue his own ineffectiveness successfully. The State more accurately describes the issue raised by Mr. Munker as the dilemma that an attorney, who has an ethical obligation to defend his client with zeal, is faced with when a client insists on the death penalty. The way in which counsel raised this ethical issue was not ineffective assistance. *Compare Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Mr. Munker did not act as a mere friend of the court assisting in a detached evaluation of petitioner's claims on appeal. *See Osborn v. State,* 672 P.2d 777 (Wyo.1983), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984).

## APPLICABILITY OF ENMUND v. FLORIDA

Petitioner argues that allowing a death sentence for an unintended felony murder violates the Eighth Amendment. The United States Supreme Court and the Court of Appeals for the Tenth Circuit have not held that a death sentence for a felony murder in which the defendant participated by using force on the victim violates the Eighth Amendment. Petitioner is not in the same position as the defendant in *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), who merely acted as lookout and driver in a robbery and did not participate in the killing or intend that lethal force be used by the robbers. Petitioner's sentence for felony murder does not violate the Eighth Amendment.

## BURDEN OF PROOF UNDER THE WYOMING CAPITAL SENTENCING STATUTE

Petitioner argues that Wyoming's capital punishment scheme is unconstitutional unless the sentencing court requires proof beyond a reasonable doubt that total aggravation outweighs total mitigation and that the death penalty is appropriate, citing *State v. Wood,* 648 P.2d 71 (Utah 1981), *cert. denied,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982). This view has not yet been adopted by a majority in the United States Supreme Court. The Court finds that under the current state of the law, the Constitution does not require such proof beyond a reasonable doubt.

## APPLICABILITY OF EDDINGS v. OKLAHOMA

Petitioner contends that the state trial court refused to consider mitigating evidence in violation of the Eighth and Fourteenth Amendments. *See Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). In the *Eddings* case, the trial judge found, as a matter of law, that he could not consider certain evidence in miti-

gation. *Id.* at 109, 102 S.Ct. at 873. At petitioner's sentencing hearing, his counsel presented evidence on non-statutory mitigating factors including Mr. Osborn's hard life, his difficulty dealing with people and the Wyoming constitutional preference for rehabilitation as a sentencing goal. (Exhibit X–2) After hearing the evidence, the trial court found that two aggravating circumstances were proven beyond a reasonable doubt and found no mitigating circumstances. (Exhibit X–2) The record does not support petitioner's argument that the trial court refused to consider mitigation evidence. It appears that the trial court permitted counsel to present all his mitigation evidence and decided that the proven aggravating circumstances outweighed the mitigation evidence. Unlike the judge in *Eddings, supra,* who refused to consider mitigation evidence as a matter of law, petitioner's sentencing judge considered the evidence presented and then rejected it. Petitioner's Eighth and Fourteenth Amendment rights were not violated by the trial court's treatment of the mitigation evidence.

## ARBITRARY AND DISPROPORTIONATE SENTENCING

Petitioner contends that the gross disparity between the sentences received by petitioner and co-defendants Green and Hopkins is grounds for vacating the sentence, citing Justice Brennan's dissent in *DeGarmo v. Texas,* — U.S. —, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985). The disparity between the sentences of the co-defendants in this case does create more than a mere appearance of unfairness. In fact, the unevenness of the sentences in proportion to guilt is surprising. But, the Constitution does not prohibit variation in sentencing of co-defendants. On the contrary, courts must consider the individual mitigating circumstances presented by each defendant to satisfy constitutional requirements. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The disparity between the sentences imposed upon petitioner and the co-defendants does

not provide additional grounds for vacating petitioner's death sentence.

Petitioner was deprived of his constitutional rights at both the plea and sentencing stages of the proceedings. Therefore, it is hereby

ORDERED that this case be remanded to an unbiased State District Court, in a county other than Uinta or Sweetwater county, before another judge, preferably someplace in the northeastern portion of Wyoming, far removed from the scene of the crimes and their attendant publicity, so that petitioner, Kevin Winston Osborn, may withdraw his plea and request for the death penalty, enter a new plea, and proceed to trial and/or sentencing.