WIENER, Circuit Judge,
concurring in part and dissenting in part:
I concur in the panel majority’s conclusion that Mr. Zalawadia satisfies the “in custody” requirement for federal habeas corpus jurisdiction. With all due respect, however, I part company with the panel majority when it proceeds to auto-emasculate the habeas powers of federal courts by severely restricting the range of remedies that I find to be available in habeas. Specifically, I can find no statutory or jurisprudential support for the majority’s conclusion that, even though we can and must vacate Mr. Zalawadia’s removal order and remand his case to the district court, we are powerless to instruct the district court to remand to the BIA for it to consider affording him the opportunity to seek 212(c) discretionary relief. And, I find distressing the unavoidable conclusions that (1) the panel majority’s reasoning is wholly irreconcilable with the Supreme Court’s prior decision in this very case, and (2) the effect of the panel majority’s cabining of the remedial powers of federal habeas courts is to render nugatory the Supreme Court’s express directive in its remand of this case to us. For these reasons, as fleshed out below, I must respectfully dissent.

I. Analysis

The panel majority’s opinion is constructed on two proffered foundations: (1) Our authority to grant Mr. Zalawadia relief is limited to “undoing current or future legal restraints on [his] freedom flowing from an illegal detention”[1]; and (2) because Mr. Zalawadia has already been deported, the only such restraint (“collateral consequence”) that we are empowered to *303 remedy is the statutory 5-year ban on reentry — ironically, the one consequence that will be removed automatically when we vacate his removal order.[2] In combination, these two underpinnings are advanced by the panel majority as supporting its ultimate conclusion that, even though Mr. Zalawadia is entitled to habeas relief vel non, the only specific relief that we are empowered to grant is vacatur of the unlawful removal order under which he was, in fact, deported. Satisfied that the panel majority has incorrectly assessed the collateral consequences faced by Mr. Zala-wadia as a result of his removal, which flawed assessment fatally undermines the majority’s application of the first of its foundational supports, I must disagree strenuously with the opinion’s overly restrictive conclusion regarding the nature and extent of the relief that we have authority to fashion.
1. Remaining “collateral consequences” of Zalawadia’s unlawful removal
As the majority notes, a petitioner presents an Article III case or controversy when he demonstrates that he suffers from “collateral consequences” from a conviction despite an end to his incarceration.[3] Although it is true that our vacating Mr. Zalawadia’s removal order will remove one such consequence — the 5-year ban on reentry that he would otherwise face — vacar tur would do nothing to rectify the standard for readmission that he would need to meet on his return. Specifically, at the time of his removal proceedings Mr. Zala-wadia should have been allowed to apply for a waiver under former INA § 212(c), which allows an eligible returning alien to be admitted “in the discretion of the Attorney General.”[4] This opportunity was improperly denied him through retroactive application of IIRIRA. By contrast, when Mr. Zalawadia applies for readmission following our vacatur of his removal order, he will still be required to obtain a waiver to re-enter the country; but he will not be permitted to try to do so under § 212(c) owing to IIRIRA. Instead, Mr. Zalawadia must apply for a waiver under 8 U.S.C. § 1182(h), which will require him to demonstrate “to the satisfaction of the Attorney General that [his] denial of admission would result in extreme hardship to [his] United States citizen or lawfully resident ... parent[s].”[5] Clearly, this is a different standard — and, in practical terms, a much higher hurdle — for establishing eligibility for readmission.
That the standard Mr. Zalawadia would face in a 212(c) hearing is discretionary is of no practical importance; the Supreme Court itself noted in'St Cyr that its own precedent has long provided that “a de-portable alien [has] a right to challenge the Executive’s failure to exercise the discretion authorized by the law.”[6] And, despite the discretionary nature of 212(c) relief (and the ihischaracterization by the panel majority), the only relief that Mr. Zalawa-dia is now seeking is the opportunity to plead his case to the BIA for an opportu *304 nity to seek 212(c) relief[7] — an opportunity that was originally denied him through the illegal retroactive application of IIRIRA. In other words, as a direct result of the illegal removal proceedings to which he was subjected, Mr. Zalawadia is now foreclosed from seeking relief under the more relaxed standard of § 212(c).[8] This result is, to me, indisputably a collateral legal consequence that flows from the illegal removal order and is one that is not removed by simply vacating that order.[9] Elimination of that untoward collateral consequence can only be achieved through equitable relief — namely, giving Mr. Zala-wadia the opportunity to have his eligibility for 212(c) relief argued at a hearing before the BIA.
The panel majority nevertheless asserts it is “baffled” by the idea that Mr. Zala-wadia. could hope to obtain relief other than vacating the removal order, insisting that any “additional” relief granted would be superfluous in light of the practical effects of the majority’s decision.[10] As noted, this simply is not true, given the higher standard Mr. Zalawadia must meet to be eligible for admission under § 1182(h)(1)(B) instead of § 212(c). Furthermore, the majority’s position underscores its confusion as to the circumstances under which Mr. Zalawadia left the country and the relief that he now seeks. Specifically, Mr. Zalawadia was detained at the border after a brief trip abroad because of his 1995 theft convictions. In pre-IIRIRA parlance, he was subjected to exclusion proceedings, not deportation.[11] As the Supreme Court explained in St. Cyr — discussing 212(c) relief in the context of deportation proceedings — successfully requesting such relief terminates those proceedings and the alien “remains a permanent resident.”[12] Presumably, a successful application for 212(c) relief would function similarly in the context of exclusion (now removal) proceedings; that is, those proceedings would be terminated and the alien would be allowed to re-enter, remaining a permanent resident.[13]
*305 In the course of litigating to reach that result, Mr. Zalawadia has contended, successfully, that the BIA improperly applied IIRIRA retroactively to foreclose the possibility of 212(c) relief. What he seeks now, however, is a BIA determination of his eligibility for such relief, in accordance with INS v. Ventura. The “best result Zalawadia could obtain” from a BIA hearing, then, is not “vacating the erroneous deportation order against him,”[14] but rather a ruling that he meets the statutory requirements for 212(c) eligibility. Then, obviously, the Attorney General would need to make the discretionary decision on whether Mr. Zalawadia should be admitted. But the Attorney General is vested with the statutory authority to do just that, provided Mr. Zalawadia is found eligible by the BIA; indeed, under St. Cyr, the Attorney General is obligated to do so.[15] The panel majority’s characterization of a remand with instructions as “additional” to vacating the 'removal order (as opposed to “different”) only muddies the water. As discussed, a remand would simply be equitable relief designed to eliminate a collateral consequence of the district court’s admittedly illegal retroactive application of IIRIRA.
2. Would our granting any habeas relief beyond vacating the original order exceed our power as a habeas court?
I fail to see anything about the relief requested in this case that makes it different from other species of equitable relief that are generally authorized by 28 U.S.C. § 2243 and which have been previously fashioned by habeas courts. On the first point, § 2243 mandates that we “dispose of [habeas petitions] as law and justice require”; the Supreme Court has long interpreted that phrase to encompass a wide range of remedies[16] and recognized that the Great Writ is governed by equitable principles.[17] On the second point, although it is true that our precedent contains no exact analogues to the current case — indeed, it was produced by the unique convergence of wildly disparate factors — federal courts have fashioned relief similar to (and, sometimes, more onerous than) the remand with instructions that Mr. Zalawadia seeks.
For example, in Osborn v. Shillinger, the Tenth Circuit upheld a district court order (entered in a habeas proceeding) allowing a defendant to withdraw his guilty plea, enter a new one, and be tried and sentenced — before a different state court judge in a different venue.[18] In considering the State’s contention that the conditions imposed by the district court exceeded its authority, the Tenth Circuit quoted *306 the “law and justice” language of § 2243 and concluded that it “[did] not believe the lower court abused its broad discretion in requiring that new state proceedings be held under [those] circumstances.... ”[19] Similarly, in Dowd v. United States ex rel. Cook, the Supreme Court quoted § 2243 and ordered that “[o]n remand, the District Court should enter such orders as are appropriate to allow the State a reasonable time in which to afford respondent the full appellate review he would have received but for the suppression of his papers .... ”[20]
It is certainly true that typically — and in both the cases noted above — the remand order is tied to the possibility of the prisoner’s release, and could be labeled a conditional grant of the writ.[21] It is also true that our arsenal of equitable remedies does not contain the “big stick” of the threat of granting outright release (or, in this situation, its analogue, forced readmission) available to compel the district court or the BIA to comply with our remand instructions, as is typically the case. But this is more a function of the confluence of factors that led to the strange procedural posture of this case,[22] and is not determinative of our authority to provide appropriate equitable relief. My point is that, in the aforementioned cases as well as in many others, the habeas courts remanded with specific instructions equitably crafted to remedy the collateral effects of the defective procedures at issue.[23] This we can do: Even though we do not enjoy the leverage of the threat of forced readmission to enforce an order to remand to the BIA for a hearing, the district court would still be bound to accept our decision.[24]
In my view, though, the most convincing evidence that we do have the power to remand with such instructions — the “proof’ of this particular “pudding”' — lies in the Supreme Court’s original decision *307 and order in this very case. Remember, it was back in October 1999 that Mr. Zalawa-dia first filed his habeas petition, listing four causes of action, including erroneous denial of a § 212(c) hearing (not relief). After the district court dismissed that petition for lack of jurisdiction — and we dismissed Mr. Zalawadia’s appeal for the same reason — the Supreme Court granted his petition for certiorari and considered his ease. At that time, his case was in exactly the same posture as it is today, i.e., the Supreme Court was not considering a “direct appeal of [a] BIA[ ] decision,”[25] but rather was acting pursuant to its habeas authority. According to the panel majority, this means that the Court was obligated to “confíne the scope of its review to considering the legality of the custody at issue.”[26] To the panel majority, the Supreme Court then enjoyed no more authority — but no less — than we do now when it comes to granting appropriate relief under the writ.
Thus, under the panel majority’s logic, the Supreme Court had only one form of relief open to it after it considered Mr. Zalawadia’s habeas appeal, viz., to vacate the illegal removal order. According to the panel majority, any other relief would be “beyond the bounds of reviewing Zala-wadia’s ‘detention simpliciter.’ ”[27] This is so, insists the panel majority, because “[t]he only question presented in [a] habe-as case concerns the legality of the order upon which [the] detention was based. By acknowledging the illegality of [the] order ... and by vacating the order ... the federal habeas court has answered and addressed this question.”[28] In fact, because the issue decided by the Supreme Court was but one of four causes of action that formed the basis of Mr. Zalawadia’s habeas petition, it is all the more obvious under the majority’s reasoning that the only remedy open to the Court would be to vacate the removal order. After all, the Supreme Court had “already made clear that the deportation order under which Zalawadia had been detained was legally flawed.”[29] Thus, according to the panel majority’s “logic”, there was neither the need nor the authority to remand with instructions. Yet that is precisely what the Supreme Court did!
I emphasize that the situation as it existed then is indistinguishable from what we face now: (1) The Supreme Court was sitting as a habeas court; (2) it had already determined that the prior proceedings were tainted — at that stage, by retroactive application of IIRIRA; and (3) it remanded to us with instructions to correct the defect, i.e., for “further consideration in light of INS v. St. Cyr.’[30] In exact parallel: (1) We are sitting as a habeas court; (2) we have already determined — through nothing less than the government’s own concession[31] — that the prior proceedings were tainted, this time through the district court’s failure to adhere to INS v. Ventura;[32] and (3) Mr. *308 Zalawadia asks only that we remand to the district court with instructions that it remand to the BIA for a hearing on his 212(c) eligibility,[33] which would cure the defect and would essentially be (as a comparison point to the relief earlier granted by the Supreme Court) “further consideration in light of Ventura.” When the panel majority states that we are without power to do this because of the nature of the unit, it is telling the Supreme Court— unwittingly, I am sure — that it was without such power when it first considered Mr. Zalawadia’s habeas petition. Even unintentionally, this is audacious.
The Supreme Court cannot conceivably agree with the panel majority’s assessment, however, because in remanding to us with instructions the Court did precisely what the panel majority insists no federal court can do.[34] This further buttresses my unequivocal belief that (1) merely vacating Mr. Zalawadia’s removal order does not remove all of the collateral legal consequences of his illegal detention, and (2) federal courts sitting as habeas courts do have the power to fashion appropriate equitable relief — such as, in this case, remanding with instructions to remand to the BIA — to eliminate such collateral consequences. Indeed, federal courts have done so for decades.[35]
Several of the eases relied on by the panel majority are so factually distinguishable from the instant case that they provide no real support for the majority opinion’s assessment of the limits of our authority. In Lehman v. Lycoming County Children’s Services Agency, for example, the petitioner sought the following forms of relief: (1) invalidation of a state statute that had terminated her parental rights, (2) a declaration that she was the legal parent of the children at issue, and (3) an order releasing the children to her custody.[36] Notably, this request was unrelated to imposed custody of any sort: Petitioner had never been “in custody,” and the Court noted that her children were “not in the ‘custody1 of the State in the sense in which that term has *309 been used by this Court in determining the availability of the writ of habeas corpus.”[37] In that context, it is hardly surprising that the Court stated that habeas is not “a generally available federal remedy for every violation of federal rights:”[38] It was the custody issue, however, that was determinative,[39] and that issue is not (as the panel majority concedes) a-factor in the instant case.
Similarly, in Amanullah v. Nelson, cited by the panel majority on pages' 299 and 300, the First Circuit noted that habeas corpus “cannot be utilized to review a refusal to grant collateral administrative relief, unrelated to the legality of custody,”[40] and, in- that case, “the appellants [had] not shown that their detention violates the law.”[41] Those two facts led ineluctably to the conclusion that the appellants in Am-anullah were not entitled to the relief they sought — -a mandate to conduct evidentiary hearings. The instant case is diametrically opposite on both counts: The collateral consequence under discussion here arises directly from Mr. Zalawadia’s detention, the illegality of which has already been established by the Supreme Court. It was precisely the illegality identified by the Courtn-the district court’s improperly foreclosing any possibility of 212(c) relief— that caused the injury for which Mr. Zala-wadia now seeks redress.
This leads to my final point: The panel majority’s opinion renders illusory all prior decisions in this case — including the Supreme Court’s ! The Court remanded for proceedings consistent with St. Cyr, but the district court’s purported conduct of such proceedings on remand itself violated the mandate of INS v. Ventura.[42] Identically, our refusal to remand with instructions for further remand to the BIA now (because of our purported inability to employ the very same form of relief that the Supreme Court has already employed in *310 this very case) means that the appropriate adjudicative body — the BIA — -will never have determined Mr. Zalawadia’s eligibility to apply for relief — thereby violating Ventura yet again. In turn, this means that Mr. Zalawadia will never have had a full and fair hearing on that question — a direct violation of the Supreme Court’s remand in his case for proceedings consistent with St. Cyr.[43]

II. Conclusion

In my opinion, this case boils down to several interrelated fallacies. First, we do not remove all of the collateral consequences of Mr. Zalawadia’s defective removal order simply by vacating that order; he would still be subject to what is, in reality, a standard to gain eligibility for reentry that we raise to an impossibly high level, i.e., a hurdle markedly higher than that applicable in a 212(c) hearing. Second, under principles of equity, habeas courts have often remanded with instructions to remedy constitutionally defective proceedings, yet the majority prevents us from doing that. Third, the Supreme Court’s remand in this very case — embodying as it does the exact form of relief Mr. Zalawadia now requests and the panel majority denies — confirms that we absolutely do have the power to order the kind of equitable relief for which he asks. Fourth, remanding on the unduly limited basis set forth by the panel majority eviscerates the Supreme Court’s decision in this case and fails to follow the overarching maxim that we dispose of habeas petitions “as law and justice require.”
On this last point, I would note that by doing nothing more than vacating Mr. Za-lawadia’s removal order, we give him no real relief at all, as we neither remedy the constitutional violation that the Supreme Court has already determined took place nor give Mr. Zalawadia the opportunity to erase the collateral legal consequences of that constitutional violation. In short, Mr. Zalawadia “is suffering, and will continue to suffer, serious disabilities because of the law’s complexities and not because of his fault.... There is no need in the statute, the Constitution, or sound jurisprudence for denying to petitioner his ultimate day in court.”[44] This is why I am constrained, with respect, to dissent.

. See opinion at p. 294 ("[W]e lack authority in this habeas action to grant relief beyond simply vacating the defective order.... The petitioner, whose liberty interests and rights are no longer encumbered by the deportation order, must turn to other procedural remedies, if any, for further relief.”).

. Opinion at p. 297; see also Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).

. See INS v. St. Cyr, 533 U.S. 289, 295, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

. 8 U.S.C. § 1182(h)(1)(B) (emphasis added).

. St. Cyr, 533 U.S. at 308, 121 S.Ct. 2271.

. Given that Mr. Zalawadia seeks not read-mittance or even a 212(c) hearing, but only the opportunity to demonstrate to the BIA his eligibility for such a hearing, his request is consistent with the panel majority's description of what habeas relief is designed to do: "The habeas remedy removes the disability that may be a bar to the exercise of liberty interests; it does not order the deprived benefit be automatically granted by the government.” Opinion at p. 300 n. 8.

. In St. Cyr, the Supreme Court noted that, historically, a "substantial percentage” of 212(c) applications have been granted; from 1989 to 1995, the percentage of successful applications was 51.5%, representing over 10,000 admitted aliens. St. Cyr, 533 U.S. at 296, 121 S.Ct. 2271.

. In Max-George v. Reno, 205 F.3d 194, 196 (2000), rev'd on other grounds, 533 U.S. 945, 121 S.Ct. 2585, 150 L.Ed.2d 746 (2001), we characterized a cognizable, "concrete” collateral consequence as one which "change[s] [petitioner’s] status with respect to his admissibility whether he tries to return to the United States or not.” The higher standard Mr. Zalawadia will face if he tries to return to the U.S. fits this description.

. Opinion atp. 301-02 n. 10.

. IIRIRA combined exclusion and deportation proceedings into a single, broader category, "removal proceedings,” which encompasses both.

. St. Cyr, 533 U.S. at 295, 121 S.Ct. 2271.

. That successfully requesting 212(c) relief would entail readmittance, and not just vacating any illegal removal orders against an individual, also appears to be true, given the text of the statute. As discussed, former § 212(c) indicates that eligible returning aliens "may be admitted in the discretion of the Attorney General.” St. Cyr, 533 U.S. at 295, 121 S.Ct. 2271 (emphasis added).

. Opinion at p. 301-02 n. 10.

. See note 6, supra, and accompanying text.

. See, e.g., notes 19-20, infra, and accompanying text.

. See, e.g., Schlup v. Delo, 513 U.S. 298, 319, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)('‘[T]he Court has adhered to the principle that habe-as corpus is, at its core, an equitable remedy.”)(Partially abrogated, on other grounds, by the Antiterrorism and Effective Death Penalty Act of 1996);' Withrow v. Williams, 507 U.S. 680, 699, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993)("Concerns for equity ... resonate throughout our habeas jurisprudence.”); Kuhlmann v. Wilson, 477 U.S. 436, 447, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986)(“In decisions of the past two or three decades, ... the Court has reaffirmed that 'habeas corpus has traditionally been regarded as governed by equitable principles.’ " quoting Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), citing United States ex rel. Smith v. Baldi, 344 U.S. 561, 573, 73 S.Ct. 391, 97 L.Ed. 549 (1953)(dissenting opinion)).

. 861 F.2d 612, 630 (10th Cir.1988).

. Id. The Tenth Circuit also held in Capps v. Sullivan, 13 F.3d 350, 352 (1993) that "barring a new trial is a permissible form of judgment” in a habeas case, when "necessary to protect the purpose of habeas corpus jurisdiction when the error forming the basis for the relief cannot be corrected in further proceedings.” The court explained that "the district court had the power to grant any form of relief necessaty...." Id. (emphasis added).

. 340 U.S. 206, 210, 71 S.Ct. 262, 95 L.Ed. 215 (1951)(emphasis added).

. In fact, in Osborn, the Tenth Circuit characterized the relief in just this way, stating that it "view[ed] the district court’s 'remand' order as, in effect, the issuance of a conditional writ.” Osborn, 861 F.2d at 630.

. Specifically, this case arises out of the landmark immigration reform that occurred in 1996, coupled with the district court’s illegal retroactive application of that law, the government's decision to deport while Mr. Zalawadia's habeas appeal was still pending, and the district court’s subsequent ignorance of INS v. Ventura. These factors have combined to create a fact pattern that is not easily found in our existing jurisprudence, and unlikely to reoccur in the future.

. See, e.g., Parker v. Dugger, 498 U.S. 308, 322-23, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991) ("We reverse ... and remand with instructions to return the case to the District Court to enter an order directing the State of Florida to initiate appropriate proceedings in state court so that Parker's death sentence may be reconsidered in light of the entire record of his trial and sentencing hearing and the trial judge's findings.”); Richmond v. Lewis, 506 U.S. 40, 52, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992) ("We reverse ... and remand with instructions to return the case to the District Court to enter an order granting the petition for a writ of habeas corpus unless the State of Arizona within a reasonable period of time either corrects the constitutional error ... or vacates the sentence and imposes a lesser sentence consistent with law.”).

. Just as we, of course, are bound to follow the Supreme Court’s directions on remand— something that, as I discuss infra, the panel majority opinion fails to do.

. Opinion at p. 298.

. Opinion at p. 299.

. Opinion at p. 301.

. Opinion at p. 301.

. Opinion at p. 298.

. Zalawadia v. Ashcroft, 533 U.S. 943, 121 S.Ct. 2581, 150 L.Ed.2d 742 (2001) (citation omitted).

. In its appellate brief, the government concedes: "Should the Court find that Zalawadia may continue to litigate his section 212(c) claim, the Government agrees that the case should be remanded to the Board to decide Zalawadia’s section 212(c) eligibility in the first instance.”

. 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).

. The panel majority asserts that Mr. Zala-wadia requested that we readmit him for the purposes of a § 212(c) hearing {see Opinion at p.-), but the fact is that he did not. Mr. Zalawadia's request for relief in both his original and reply briefs is simple: He “requests that this Court reverse the District Court's decision and remand his case to the Board of Immigration Appeals for further consideration in light of the Supreme Court’s decision in INS v. St. Cyr, or in the alternative, find that [he] is eligible for 212(c) relief and order that this matter be remanded to the [BIA] with instructions to hold a hearing on 212(c) relief.” Mr. Zalawadia raised the possibility of readmittance for the purpose of attending a 212(c) hearing only in his reply brief in response to the government’s arguments that (1) BIA regulations precluded Mr. Zalawadia from continuing his case and (2) the government was “aware of no authority holding that removed aliens, such as Zalawadia, have a 'right' to continue to litigate claims for discretionary relief under former section 212(c) from abroad.” Similarly, at oral argument this subject was addressed after questioning by the panel on the point. Setting aside for the moment that it is far from certain that Mr. Zalawadia would be required to attend such a hearing, as he is ably represented by counsel, the fact is that his appeal focuses exclusively on the district court's improper consideration (and ultimate denial) of his eligibility for 212(c) relief: The question of his readmission has never been before us.

. I note, also, that the Court's remand in this case could not be termed a conditional grant of the writ; i.e., the Court did not say "conduct proceedings consistent with St. Cyr or release or readmit the petitioner”; it simply remanded with instructions, just as Mr. Zala-wadia requests that we do now.

. See, e.g., notes 19-20, supra, and accompanying text.

. 458 U.S. 502, 506, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982).

. Id. at 510, 102 S.Ct. 3231.

. Id.

. The district court had originally held that "the custody maintained by the Respondent over the three Lehman children is not that type of custody to which the federal habeas corpus remedy may be addressed.” See Lehman, 458 U.S. at 506, 102 S.Ct. 3231 (quoting Lehman v. Lycoming County Children’s Services Agency, Civ. No. 79-65, (MD Pa.1979)). The Third Circuit affirmed the district court dismissal, and the Supreme Court affirmed the Third Circuit.

. Amanullah v. Nelson, 811 F.2d 1, 17 (1st Cir.1987) (emphasis added) (quoting 2 C. Gordon & H. Rosenfield, Immigration Law and Procedure. § 8.7(h) (Revised ed. and Cum. Supp.1986)).

. Amanullah, 811 F.2d at 17 (emphasis added).

. Herein lies the flaw in the panel majority's contention that vacating the removal order alone comports with the Supreme Court's remand in this case. See opinion at p. 301-02, n. 10. Although "cursory and non-specific," I think it obvious that the Court’s directive that ■ (in the panel majority’s words) "lower courts ... reconsider Zalawadia’s case in the light of the recently-decided St. Cyr ” dictates, at a minimum, that any district court reconsideration be consistent with the Constitution, existing law, and Supreme Court precedent. In this case, as noted and as the government has conceded, the district court improperly decided the question of Mr. Zalawadia’s 212(c) eligibility.. The district court was not empowered to make that decision. Therefore, when it did so, it deprived Mr. Zalawadia of a reconsideration consistent with St. Cyr. Under the panel majority’s reasoning, any reconsideration by the district court would meet the dictates of the Supreme Court remand, regardless of whether that reconsideration offended the Constitution or was otherwise illegal. With all due respect, I must wonder whether the panel majority would still consider the district court's reconsideration in line with the Supreme Court remand if the district court had disposed of Mr. Zalawadia’s case by, say, flipping a coin.

. Undermining the Supreme Court’s remand in this way not only violates an intuitive understanding of how we should honor Supreme Court decisions, but specific Supreme Court precedent as well: “When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review....” Harper v. Va. Dep’t of Taxation, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).

. Carafas v. LaVallee, 391 U.S. 234, 239, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).