**Opinion filed January 25, 2018**



### In The

# Eleventh Court of Appeals

_____

## No. 11-16-00296-CR

_____

## MARTIN FLORES, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CR44415**

### M E M O R A N D U M   O P I N I O N

The jury found Appellant guilty of two counts of the second-degree felony offense of sexual assault of a child.[1]  For the first count, the jury assessed punishment at confinement for ten years but recommended that the trial court suspend Appellant's sentence and place him on community supervision.  For the second count, the jury assessed punishment at confinement for twenty years.  The trial court accepted the jury's recommendation on the first count and placed Appellant on

---

[1]*See* TEX. PENAL CODE ANN. § 22.011 (West Supp. 2017).

community supervision for ten years. On the second count, the trial court sentenced Appellant to confinement for twenty years. On appeal, Appellant presents two issues. We affirm.

## I. *The Charged Offense*

The grand jury indicted Appellant on two separate counts for the offense of sexual assault of a child. Under Count One, the indictment alleged that Appellant intentionally and knowingly caused the penetration of M.B.'s sexual organ with his sexual organ while M.B. was under the age of seventeen. Under Count Two, the indictment alleged that Appellant intentionally and knowingly caused the penetration of M.B.'s anus with his sexual organ while M.B. was under the age of seventeen. A person commits the offense of sexual assault of a child if the person intentionally or knowingly "causes the penetration of the anus or sexual organ of a child" who is under the age of seventeen. TEX. PENAL CODE ANN. § 22.011(a)(2)(A).

## II. *Evidence at Trial*

In November 2014, M.B. was living with Appellant's wife, Pollyanna Flores, and Appellant's ex-sister-in-law, Kyla Graves, in Lubbock. M.B. is Pollyanna's cousin and had moved in with Pollyanna to assist with the care of her three children. Appellant worked in the oil fields in Midland, Texas, and was only home about "once every other week" or on "[t]he weekends." M.B. accused Appellant of sexually assaulting her at a hotel room in Midland on or about November 5, 2014. M.B. was sixteen years old at the time, and her recollection of that night was unclear because she drank too much alcohol.

### A. *M.B., Pollyanna, and the three children took a trip to Midland.*

M.B., Pollyanna, the children, and Appellant met up at a Comfort Inn in Midland in a hotel room with two beds. Appellant brought alcoholic drinks with him, and Appellant, Pollyanna, and M.B. all proceeded to drink together. M.B.

2

remembered being on one of the beds while Appellant, Pollyanna, and the children were on the other bed.

M.B. testified that the next thing she remembered was being in the bathroom with Pollyanna. Pollyanna asked M.B. to check and see if Pollyanna still had her tampon in. M.B. checked for her. The next thing M.B. remembered was being in the main room and lying on one of the beds next to Pollyanna. M.B. said that Appellant stood in front of his wife and then moved over to M.B. and "put his penis inside of me [M.B.]." M.B. "believed" that Appellant put his penis in her "butt," but she did not remember if he put it anywhere else. M.B. remembered saying "stop" and then remembered being in the restroom "trying to calm down." M.B. showered "to try and get everything out," and when she walked out of the restroom, she noticed that Appellant was not there and Pollyanna was crying. M.B. then told Pollyanna that she was ready to leave.

Graves testified at trial that M.B. called her on the phone around 4:00 or 4:30 a.m. on their drive back to Lubbock and that they arrived back home around 6:30 a.m. During the phone call with M.B., Graves did not notice anything out of the ordinary. Graves remarked that, when M.B. arrived at the house, she appeared to be "[j]ust fine" but that Pollyanna was crying. Graves said that she never witnessed anything inappropriate happen between Appellant and M.B.

### B. M.B. spoke out about the sexual assault, and a nurse conducted a sexual assault examination.

M.B. testified that, later that day, she texted her close friend about what had happened. Her friend, in turn, communicated with M.B.'s brother at school and told him about the assault. M.B.'s mother found out and took M.B. to the emergency room at University Medical Center in Lubbock because M.B. was in pain and "was bleeding from [her] butt." At the emergency room, M.B. said she had been "raped the night before" by Appellant.

3

Angelica Loli Reyna, the "nursing house supervisor" at UMC and a sexual assault nurse examiner (SANE), and Cassandra Schmitt, a victim's advocate for the Lubbock Rape Crisis Center, were called to UMC in response to M.B.'s accusations. Reyna conducted a sexual assault examination on M.B., and Schmitt was present during the examination to "provide a listening ear." Reyna testified that M.B. identified Appellant as her assailant and told her that Appellant "stuck his penis in [her] vagina" and then "turned [her] over and stuck his penis in [her] butt." Reyna also conducted an "anal-genital examination" on M.B. and found an abrasion on her inner thigh and groin area, "significant redness" at the entry of her vagina—specifically the posterior fourchette, and three anal tears. Reyna testified at trial that her findings were consistent with what M.B. had told her, specifically with regard to the anal penetration that M.B. had alleged. Schmitt testified that M.B. was sobbing and shaking while speaking to the police and while recalling the assault to the nurse.

III. *Analysis*

In his first issue, Appellant claims his "trial counsel was ineffective when he admitted his client's guilt to the jury during opening statement and closing arguments." In his second issue, Appellant claims that the evidence was insufficient to convict him of sexual assault of a child as alleged in Count One of the indictment. We will address Appellant's sufficiency challenge first and then address his ineffective assistance of counsel claim.

    A. <u>*Issue Two*</u>: *The State adduced sufficient evidence to convict Appellant of the offense of sexual assault of a child as alleged in Count One of the indictment.*

Appellant complains in his second issue that that the State adduced insufficient evidence that Appellant intentionally and knowingly penetrated M.B.'s sexual organ with his sexual organ. Appellant points out that M.B. could not recall if Appellant vaginally penetrated her but testified merely that she "believed"

4

Appellant put his penis in her "butt." The State argues that Reyna's testimony and the admitted SANE report provide competent evidence of vaginal penetration. We agree with the State and conclude that Reyna's testimony and the SANE report constitute sufficient evidence from which a jury could have reasonably concluded that Appellant penetrated M.B.'s sexual organ with his sexual organ.

The standard of review for sufficiency of the evidence is whether any rational jury could have found Appellant guilty beyond a reasonable doubt of the charged offense. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences raised by the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 894; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Although M.B. did not testify at trial that she was vaginally penetrated by Appellant, M.B. told Reyna during the SANE examination that Appellant "stuck his penis in my vagina." Reyna recounted M.B.'s statements at trial, and Reyna's SANE report, which also contained M.B.'s allegations of vaginal penetration, was admitted into evidence. M.B. testified she was sixteen years old at the time of the assault. This is sufficient evidence from which a jury could have reasonably concluded that Appellant intentionally and knowingly penetrated M.B.'s "sexual organ" with his

sexual organ while she was under the age of seventeen. PENAL § 22.011(a)(2)(A); *see Adams v. State*, 502 S.W.3d 238, 244 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (concluding that a SANE nurse's testimony was sufficient evidence from which a jury could have concluded that the defendant committed the offense of aggravated sexual assault against a child). Moreover, Reyna found an abrasion on M.B.'s inner thigh and groin area and "significant redness" at the entry of her vagina.

The defense elicited testimony from Reyna that the "abrasion" was not actually an abrasion, but just "pretty red" skin, and that the red skin could have been caused by tight clothing. The jury could have chosen to disregard this testimony. *See Sharp*, 707 S.W.2d at 614; *Isham*, 258 S.W.3d at 248. After a review of the record, we hold that a rational jury could have found beyond a reasonable doubt that Appellant committed the offense of sexual assault of a child as alleged in Count One of the indictment. We overrule Appellant's second issue.

B. *Issue One: Appellant has failed to establish that he received ineffective assistance of counsel.*

Appellant argues in his first issue that he received ineffective assistance of counsel because his attorney stated in his opening statement and closing argument that "something did happen" and that we are not going to deny that "something happened." Appellant claims that this is a concession of guilt and argues that he received ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and, alternatively, *United States v. Cronic*, 466 U.S. 648 (1984). As we explain below, we disagree that Appellant's trial counsel conceded his guilt and hold that Appellant has not carried his burden of showing ineffective assistance of counsel under either *Strickland* or *Cronic*.

*1. An appellant ordinarily has the burden, under Strickland, to prove deficient performance and prejudice, but in extreme circumstances, under the standard outlined in Cronic, prejudice is presumed.*

In most cases, we review an ineffective assistance of counsel claim under the *Strickland* standard, which is a two-part analysis that includes a performance prong and a prejudice prong. *Strickland*, 466 U.S. at 687. For the performance prong, Appellant must show that trial counsel's performance was deficient. *Id.* For the prejudice prong, Appellant must show that there is a reasonable probability that the outcome would have differed but for trial counsel's errors. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Strickland*, 466 U.S. at 694. "A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel." *Hudson v. State*, No. 11-15-00047-CR, 2016 WL 3573484, at *2 (Tex. App.—Eastland June 30, 2016, pet. ref'd) (mem. op., not designated for publication) (citing *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010)).

In rare cases, a party claiming ineffective assistance of counsel is not required to show prejudice, but rather, prejudice is presumed and the party is only required to show deficient performance. *Florida v. Nixon*, 543 U.S. 175, 190 (2004); *see Cronic*, 466 U.S. at 658–60. As outlined in *Cronic*, prejudice will be presumed if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. In this scenario, there is "a constructive denial of the assistance of counsel altogether," and prejudice is presumed because it is "so likely." *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008) (citing *Cronic*, 466 U.S. at 658–59); *see Bell v. Cone*, 535 U.S. 685, 696–97; *Strickland*, 466 U.S. at 692; *Ex parte McFarland*, 163 S.W.3d 743, 752–53 (Tex. Crim. App. 2005).

In *Cannon*, for example, the Court of Criminal Appeals presumed prejudice where defense counsel "effectively boycotted the trial proceedings" and "abandoned

7

his role as advocate for the defense." *See id.* at 350 (noting that counsel, in part, declined to participate in jury selection, declined to make objections, declined to cross-examine State witnesses, declined to make an opening or closing argument, and declined to offer any defense because he was "unprepared to go forward"). The Tenth and Ninth Circuit Courts of Appeals have also stated that an attorney's admission that his client is guilty invokes the presumption of prejudice and results in a "fail[ure] to subject the prosecution's case to meaningful adversarial testing." *United States v. Swanson*, 943 F.2d 1070, 1074 (9th Cir. 1991) ("A lawyer who informs the jury that it is his view of the evidence that there is no reasonable doubt regarding the only factual issues that are in dispute has utterly failed 'to subject the prosecution's case to meaningful adversarial testing.'" (quoting *Cronic*, 466 U.S. at 659)); *Osborn v. Shillinger*, 861 F.2d 612, 625 (10th Cir. 1988) ("[A]n attorney who adopts and acts upon a belief that his client should be convicted 'fail[s] to function in any meaningful sense as the Government's adversary.'"); *see also United States v. Williamson*, 53 F.3d 1500, 1511 (10th Cir. 1995). This presumption of prejudice should only be applied in extreme circumstances. *See Harris v. State*, No. 11-05-00411-CR, 2007 WL 2128954, at *2 (Tex. App.—Eastland July 26 2007, no pet.) (not designated for publication) (citing *Cronic*, 466 U.S. at 659–60); *see also Nixon*, 543 U.S. at 190.

> *2. Appellant has not shown that his trial counsel failed to subject the prosecution's case to meaningful adversarial testing under Cronic.*

Appellant asserts that prejudice should be presumed under *Cronic* because his attorney failed to subject the prosecution's case to meaningful adversarial testing when, in opening statement and closing argument, he stated that "something happened." We disagree with Appellant's argument for two reasons: (1) Appellant's attorney did not admit Appellant's guilt when he stated that "something happened";

8

and (2) Appellant's counsel remained an advocate for Appellant throughout the entire trial.

First, when counsel's statements are considered in context with his full opening and closing statements, rather than in isolation, it is clear that counsel did not concede Appellant's guilt. In counsel's opening statement and closing argument, each time he said that "something did happen" and that we are not going to deny that "something happened," he limited his statements immediately afterwards when he argued that the State could not meet its burden of proof. For example, in closing argument after counsel said, "We're not denying that something happened," he asked the jury twice: "What really happened?" He continued and stated that the State's case "is riddled with nothing but reasonable doubt" and ultimately asked the jury to find Appellant "not guilty." Counsel's statements were not a concession of guilt because his statement that "something happened" does not concede facts that show Appellant was guilty of an element of the offense of sexual assault of a child. *Compare Nixon*, 543 U.S. at 182 (conceding guilt where counsel stated that "[i]n this case, there won't be any question, none whatsoever, that my client, Joe Elton Nixon, caused Jeannie Bickner's death"), *and Swanson*, 943 F.2d at 1074 (presuming prejudice because defense counsel conceded that there was no reasonable doubt that his client was the perpetrator and that he committed the offense charged), *with Williamson*, 53 F.3d at 1510–12 (holding that there was no concession of guilt where defense counsel stated in closing argument that he was not going to dispute the testimony from three police officers that they bought drugs from his client, even though the defendant had testified that they were lying).

Second, the entire record reflects that Appellant's attorney "remained a legal advocate of the defendant who acted with 'undivided allegiance and faithful devoted service.'" *Williamson*, 53 F.3d at 1511. Before trial began, Appellant's counsel filed various motions and participated in several hearings—all in support of

Appellant's defense. Appellant's attorney subsequently questioned and instructed the venire panel during voir dire about the State's burden of proof, the presumption of innocence afforded to Appellant, and the possibility of probation as punishment. Appellant's attorney thereafter asserted numerous challenges for cause and exhausted all of the allowable peremptory strikes at the conclusion of voir dire.

During the State's case-in-chief, the State called six witnesses to testify, and Appellant's trial counsel cross-examined all of the witnesses. Significantly, Appellant's counsel elicited testimony, on cross-examination from Reyna, that sexual assault was not the only possible cause of M.B.'s injuries. In addition, Reyna conceded that the "abrasion" she observed was not actually an abrasion at all but, rather, was just "pretty red" skin. In addition to other objections, Appellant's counsel objected to the admission of the SANE report and to the proffer of Reyna as an expert.

After the State rested, the defense called two witnesses: Kyla Graves and Appellant's mother, Zoila Flores. Appellant's counsel elicited exculpatory testimony from Graves that she never witnessed anything inappropriate transpire between Appellant and M.B.

Based on the foregoing, there is nothing in the record to suggest that Appellant's trial counsel failed "to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. For the presumption of prejudice to apply, "the attorney's failure to test the prosecutor's case must be complete." *Bell*, 535 U.S. at 686; *see Cannon*, 252 S.W.3d at 350. The extreme circumstances required to presume prejudice are not before us in this case. Therefore, to prevail on his ineffective assistance of counsel claim, Appellant must show, under *Strickland*, both deficient performance and prejudice. *Strickland*, 466 U.S. at 687.

10

*3. Appellant has failed to show that his attorney's remarks, even if we assume that such remarks constitute deficient performance, prejudiced him.*

Appellant argues under *Strickland* that his attorney rendered deficient performance by the remarks made during opening and closing and that he was prejudiced as a result. Assuming without deciding that counsel's performance was deficient under *Strickland*, Appellant has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Cannon*, 252 S.W.3d at 349. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Appellant argues that admitting "something did happen" undermined Appellant's not guilty plea and the reasonable doubt argument espoused at trial. However, M.B.'s and Reyna's testimony strongly weighed against Appellant and supported a finding that Appellant sexually assaulted M.B. "When making [the prejudice] determination, any constitutionally deficient acts or omissions will be considered in light of the 'totality of the evidence before the judge or jury.'" *Ex parte Ellis*, 233 S.W.3d 324, 331 (Tex. Crim. App. 2007) (quoting Strickland, 466 U.S. at 695). Given the weight of the evidence showing Appellant's guilt, counsel's remarks that "something happened" did not prejudice Appellant's defense. *See Thompson v. State*, 915 S.W.2d 897, 904 n.2 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (concluding that an attorney's remarks throughout trial that the true issue in the case was punishment rather than guilt did not prejudice the defendant because there was "overwhelming evidence of [the defendant's] guilt"). We overrule Appellant's first issue.

## IV. *This Court's Ruling*

We affirm the judgments of the trial court.


MIKE WILLSON

JUSTICE


January 25, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[2]

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.